IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB SALCIDO, a minor by and through his guardian ad litem Jeanine Salcido,<br><br>              Plaintiff,<br>   v.<br><br>THE COUNTY OF MADERA, DEPUTY JEFFERY THOMAS #10321, SERGEANT PATRICK MAJESKI #8484, DEPUTY MATTHEW KUTZ #11173, DEPUTY S. STRIZEL #8616, DEPUTY MARK SCHAFER #9630, DEPUTY BRIAN CUTLER #10846, DEPUTY IAN WEAVER #11404, and DOES 1-50,<br><br>              Defendants. | 1:10-CV-195  AWI DLB<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>[Doc. #24] |

## BACKGROUND

This lawsuit arises from a confrontation between Plaintiff Jacob Salcido ("Salcido"), a minor, and members of the Madera County Sheriff's Department.[1] Salcido alleges violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). Defendants move to dismiss Salcido's Amended Complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion will be granted in part and denied in part.

---

[1] Salcido filed this case without a guardian ad litem. The Court stayed the proceedings in order to give Salcido the opportunity to petition for the appointment of a guardian ad litem. The Court appointed Salcido's mother, Jeanine Salcido, to be guardian ad litem. The Court lifted the stay on October 6, 2010.

**LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all of the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pac. Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). Thus, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts

> that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Id. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

**ALLEGED FACTS**

The Complaint alleges that on February 19, 2008, Defendants Deputy Jeffery Thomas ("Thomas") and Sergeant Patrick Majeski ("Majeski") parked in front of Salcido's home.  Complaint at ¶ 19.  Thomas and Majeski entered the property without a warrant or the consent of the homeowners, Salcido's parents.  Id. at ¶ 20.  Thomas and Majeski "started questioning those present if anyone had witnessed a fight that occurred earlier that day."  Id. at ¶ 21.  Salcido, with his parents present, said he saw what happened, but stated he was not involved nor a party to the fight.  Id. at ¶ 22.  Salcido "voluntarily assisted" Thomas and Majeski by telling them what he saw.  Id.  Salcido told the officers that "there was a fight in the middle of the road earlier that day" and "[t]hat one individual was taken to the hospital and the other fled on foot."  Id. at ¶ 23.

The Complaint alleges that "Salcido's father directed [him] to go inside the home since a stranger was approaching the home."  Id. at ¶ 24.  "Salcido listened to his father and proceeded to enter the home."  Id. at ¶ 25.  "Suddenly, without probable cause, deputy Thomas grabbed [Salcido] around the neck and took him to the ground."  Id. at ¶ 26.  While Thomas held Salcido down on the ground, Majeski, without probable cause, tazed Salcido twice in the back.  Id. at ¶ 28.  The Complaint alleges that Thomas and Majeski were both motivated by the fact that Salcido was a person of color.  Id. at ¶¶ 27, 30.

The Complaint alleges that Thomas and Majeski, "in order to cover up their unlawful seizure and excessive use of force against [Salcido], charged [Saldico] with PC 148 resisting."

Id. at ¶ 33. "The arrest was false" because "[a]t no time did [Salcido] resist the officers." Id. Subsequently, the "Madera District Attorney's office dismissed the PC 148 case against [Salcido] with prejudice." Id. at ¶ 35. The Complaint alleges that in all of the above allegations, Thomas and Majeski "were assisted" by Defendants Deputy Matthew Kutz ("Kutz"), Deputy S. Strizel ("Strizel"), Deputy Mark Schafer ("Schafer"), Deputy Brian Cutler ("Cutler") and Deputy Ian Weaver ("Weaver"). Id. at ¶ 34.

## DISCUSSION

### A.   Claims against Kutz, Strizel, Schafer, Cutler and Weaver

In the Complaint, Salcido alleges that Defendants Kutz, Strizel, Schafer, Cutler and Weaver are employed by the County of Madera in the Sheriff's Department. Complaint at ¶¶ 8-12, 16. The only other specific factual allegation against these Defendants is that they "assisted" Thomas and Majeski. Id. at ¶ 34. Defendants contend that Salcido "has failed to plead any material details with respect to what actions" these Defendants have taken and that this failure is "fatal to [Salcido's] claim." Motion at 4:16-19. In his opposition, Salcido has agreed to dismiss Kutz, Strizel, Schafer, Cutler and Weaver from the Complaint. Opposition at 1:23-26. Accordingly, Defendants' Motion to Dismiss Salcido's claims against Kutz, Strizel, Schafer, Cutler and Weaver is GRANTED.

In the previous order dismissing Salcido's original complaint, the Court noted that Salcido's complaint "appears to single out" Thomas and Majeski, "but then it proceeds to lump all defendants together." Order at 4:16-17. The Court warned Salcido that he "needs to differentiate among the Defendants and explain what each Defendant did to deprive him of a constitutional right." Id. at 4:22-24. Since Salcido has failed again to specifically allege what Kutz, Strizel, Schafer, Cutler and Weaver did wrong, it is apparent that Salcido cannot rectify the deficiencies of these claims through additional allegations. See Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002) (stating that leave to amend need not be granted when amendment would be futile). Therefore, dismissal is with prejudice and without leave to amend.

### B.   Claim against the County of Madera

In the fourth cause of action, Salcido attempts to state a claim under 42 U.S.C. § 1983

4

against the County of Madera.  Salcido alleges:

> 45.   The County of Madera has, under color of law, violated [Salcido's] rights, privileges and immunities secured by the United States Constitution in violation of Section 1983 of Title 42 of the United States Code in that it has established an unwritten policy, practice and custom of: (i) questioning persons of color pursuant to a "general interest in crime control", (ii) effecting false arrests of persons of color who exhibited "passive response" to questioning; (iii) tasering a person of color simply for "passive conduct", and (iv) failing to adequately train, supervise, instruct, monitor, and discipline Madera Deputies in responding to passive conduct.
>
> 46.   The above described customs, practices and policies demonstrate a deliberate indifference on the part of the Defendants . . . and were the cause of the violations of [Salcido's] rights alleged herein.
>
> 47.   During all relevant times, one or more of the Defendants, established, maintained encouraged, allowed and/or ratified the above described custom, practice or policy[.]

Complaint at ¶¶ 45-47.

Municipalities are considered "persons" under 42 U.S.C. § 1983 and may be liable for causing a constitutional deprivation.  Monell v. Dep't of Soc. Servs. of the City of New York, 98 S.Ct. 2018 (1978).  However, "a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Id. at 2036.  Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Id. at 2037-38.  Thus, in order to state a municipal liability claim, a plaintiff needs to (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur.  Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009).

"A policy is a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (internal quotations marks and citations omitted).  A "custom" is a widespread practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  City of St.

Louis v. Prapotnik, 108 S.Ct. 915, 926 (1988).  Municipal liability based on ratification occurs when "authorized policymakers approved a subordinate's decision and the basis for it[.]"  Id.

A municipality's failure to train its employees may also create § 1983 liability when the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."  City of Canton, Ohio v. Harris, 109 S.Ct. 1197, 1204 (1989). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy."  Long, 442 F.3d at 1186.  A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those officers.  Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007).

In this case, Salcido has set forth only conclusory allegations against the County of Madera.  In order to state a claim for municipal liability under Monell, Salcido must allege facts establishing that the County of Madera caused his constitutional violation through a custom, policy, ratification, or a failure to train.  It is not enough to simply conclude that there is a policy, custom, ratification or failure to train.  The Supreme Court has made clear that the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S.Ct. at 1949.  Therefore, Salcido has not stated a municipal liability claim against the County of Madera.  Accordingly, Defendants' Motion to Dismiss Salcido's municipal liability claim against the County of Madera is GRANTED.

Salcido's opposition contains numerous facts that should have been included in the Complaint, but were omitted.  The additional facts indicate that amendment of Salcido's municipal liability claim would not be futile.  See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (facts raised in opposition papers may not defeat a motion to dismiss, but may be considered by the court to determine whether dismissal should be with or without prejudice). Therefore, the Court will dismiss Salcido's municipal liability claim against the County of Madera without prejudice and with leave to amend.

    **C.**    **Claims against Thomas and Majeski**

        **1.**    **Excessive Force**

In his first cause of action, Salcido alleges that one or more of the Defendants violated his right to be free from excessive force under the Fourth Amendment. Complaint at ¶ 39. To state a cause of action under § 1983, a plaintiff must "plead that (1) the defendants acted under color of state law and (2) deprived plaintiff of rights secured by the Constitution or federal statutes." WMX Techs., Inc. v. Miller, 197 F.3d 367, 372 (9th Cir. 1999).

All claims that law enforcement officers used excessive force, either deadly or non-deadly, in the course of an arrest, investigatory stop, or other seizure of a citizen are to be analyzed under the Fourth Amendment. Graham v. Connor, 109 S.Ct. 1865, 1871 (1989). The key inquiry in a Fourth Amendment excessive force case is whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 1872 (citations omitted). The analysis of whether a specific use of force was objectively reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Id. at 1871.

Salcido has stated a plausible excessive force claim against Thomas and Majeski under § 1983. In the Complaint, Salcido alleges that Thomas, without probable cause, grabbed him by the neck and took him to the ground. Complaint at ¶ 26. While Thomas held Salcido on the ground, Salcido alleges that Majeksi tazed him twice in the back without probable cause. Id. at ¶ 29. Accordingly, Defendants' Motion to Dismiss Salcido's excessive force claim against Thomas and Majeksi is DENIED.

        **2.**    **Unlawful Arrest**

In the second cause of action, Salcido alleges that one or more Defendants violated his right to be free from arrest without probable cause in violation of the Fourth Amendment. Complaint at ¶ 41. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Dubner v. City and Cnty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001) (citation omitted).

1    Here, Salcido alleges that Thomas and Majeski arrested him for "PC 148 resisting."
2 Complaint at ¶ 33.  Salcido alleges that "[t]he arrest was false" because "[a]t no time did
3 [Salcido] resist the officers."  Id.  Salcido has clearly stated a plausible claim for unlawful arrest
4 under § 1983.  Accordingly, Defendants' Motion to Dismiss Salcido's unlawful arrest claim
5 against Thomas and Majeski is DENIED.

6            **3.       Equal Protection**

7    In the third cause of action, Salcido alleges that one or more Defendants violated his right
8 to equal protection of the laws under the Fourteenth Amendment.  Complaint at ¶ 43.  Salcido
9 alleges that Defendants targeted him, arrested him and tasered him because of his race.  Id.  "The
10 Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to
11 any person within its jurisdiction the equal protection of the laws,' which is essentially a
12 direction that all persons similarly situated should be treated alike."  Serrano v. Francis, 345 F.3d
13 1071, 1081 (9th Cir. 2003) (citation omitted).  "Denials [of the equal protection of the laws] by
14 any person acting under color of state law are actionable under § 1983."  Dyess ex Rel. v.
15 Tehachapi Unified School Dist., No. 1:10-CV-00166-AWI-JLT, 2010 WL 3154013, at *6 (E.D.
16 Cal. Aug. 6, 2010).  In order to state a § 1983 equal protection claim, the plaintiff must "plead
17 intentional unlawful discrimination or allege facts that are at least susceptible of an inference of
18 discriminatory intent."  Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir.
19 1998).

20    As a preliminary matter, Defendants argue that Salcido's equal protection claim is fatally
21 defective because Salcido is attempting to "double up" on his constitutional claims.  Opposition
22 at 6:8-10.  Specifically, Defendants contend that Salcido's Fourteenth Amendment claim is
23 duplicative of his Fourth Amendment claim.  Id. at 6:21-22.

24    "[C]ertain wrongs affect more than a single right and, accordingly, can implicate more
25 than one of the Constitution's commands."  Armendariz v. Penman, 75 F.3d 1311, 1320 (9th Cir.
26 1996).  Thus, in a § 1983 case, the first inquiry is to "isolate the precise constitutional violation
27 which [the defendant] is charged."  Baker v. McCollan, 99 S.Ct. 2689, 2692 (1979).  A plaintiff
28 may not "double up" on constitutional claims, meaning "[w]here a claim can be analyzed under

'an explicit textual source' of rights in the Constitution, a court may not also assess the claim under another, 'more generalized,' source." Ramirez v. Butte-Silver Bow Cnty., 298 F.3d 1022, 1029 (9th Cir. 2002).

In this case, Salcido's Fourth and Fourteenth Amendment claims are not duplicative. Although the alleged constitutional violations involve the same underlying facts, Salcido is alleging distinct constitutional violations. In Salcido's Fourth Amendment claims, he is alleging that Thomas and Majeski conducted an unlawful arrest and used excessive force against him; in Salcido's Fourteenth Amendment claim, he is alleging that there was intentional unlawful discrimination by Thomas and Majeski.

Despite there being no "double up" of constitutional violations, Salcido has not stated an equal protection claim. In the Complaint, Salcido makes the conclusory allegation that Thomas and Majeski targeted, arrested and tasered him because of his race. Complaint at ¶ 43. Salcido's conclusion is not supported by any factual allegations suggesting an improper racial motive on the part of Thomas or Majeski. Therefore, Salcido has not stated an equal protection claim.

Accordingly, Defendants' Motion to Dismiss Salcido's equal protection claim against Thomas and Majeski is GRANTED. Since this is the first time Salcido has brought an equal protection claim, dismissal is without prejudice and with leave to amend.

### 4. Conspiracy

In his opposition, Salcido states that he will withdraw his conspiracy claim under 42 U.S.C. § 1985(3). Accordingly, Defendants' Motion to Dismiss Salcido's 42 U.S.C. § 1985(3) claim is GRANTED. Dismissal is without prejudice and with leave to amend.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss Salcido's claims against Kutz, Strizel, Schafer, Cutler and Weaver is GRANTED with prejudice and without leave to amend;

2. Defendants' Motion to Dismiss Salcido's municipal liability claim against the County of Madera is GRANTED without prejudice and with leave to amend;

3. Defendants' Motion to Dismiss Salcido's excessive force claim against Thomas

and Majeski is DENIED;

4. Defendants' Motion to Dismiss Salcido's unlawful arrest claim against Thomas and Majeski is DENIED;

5. Defendants' Motion to Dismiss Salcido's equal protection claim against Thomas and Majeski is GRANTED without prejudice and with leave to amend;

6. Defendants' Motion to Dismiss Salcido's 42 U.S.C. § 1985(3) claim against Thomas and Majeski is GRANTED without prejudice and with leave to amend;

7. Salcido has thirty (30) days to file a Second Amended Complaint consistent with this order.

IT IS SO ORDERED.

Dated:   February 28, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE